IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RUTH MCDONNELL and,** : | |
| **GARY MCDONNELL,** : | |
| : | **CIVIL ACTION** |
| **Plaintiffs,** : | |
| : | **NO. 21-1404** |
| **v.** : | |
| : | |
| **FLOWONIX MEDICAL INC.,** : | |
| : | |
| **Defendant.** : | |

**MEMORANDUM**

**TUCKER, J.**                                                                                       **January 25, 2022**

Presently before the Court is Defendant Flowonix Medical Inc.'s ("Defendant" or "Flowonix") Partial Motion to Dismiss (ECF No. 13), Plaintiffs' Response in Opposition (ECF No. 14), and Defendant's Reply Brief (ECF No. 17). Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

      **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Defendant is a designer, manufacturer, producer, and supplier of medical devices; in particular, Flowonix manufactured a programmable infusion pump and catheter, known as Prometra II ("Prometra" or "the Pump") that can be implanted in a patient. Pls.' Amend. Compl. ¶ 7. The Pump is designed to release pain medication in a semi-autonomous way through software programs. *Id*. ¶¶ 10-12. This allows patients the ability to avoid the need to take oral medication. *Id*.

---

[1] This section draws primarily from Plaintiffs' Amended Complaint (ECF No. 8).

1

Plaintiff Ruth McDonnell suffered from spinal stenosis, spondylolisthesis, and arthritis which caused her chronic and intractable back pain, associated discomfort, dysfunction, and distress. Pls.' Amend. Compl. ¶¶ 12-13. On or about November 23, 2015, Plaintiff's physician, Steven Rosen ("Dr. Rosen") implanted the Pump in Plaintiff's body. *Id*. ¶ 12. Upon the Pump's implantation, Plaintiff experienced significant relief. *Id*. ¶ 14.

Approximately three years after it was installed, however, the Pump began to malfunction. Pls.' Amend. Compl. ¶ 15.  This led to a series of unfortunate events, and ultimately, this lawsuit. *Id*. On December 11, 2018, Plaintiff went to Dr. Rosen's office for a diagnostic test; in preparation for the MRI, medical personnel emptied her Pump. *Id*. ¶ 16. After Dr. Rosen's office performed the MRI on Plaintiff's spine, they refilled the Pump. *Id*.

Later that evening, Plaintiff began to experience physical and mental pain that increased in severity as time passed. Pls.' Amend. Compl. ¶ 16. Plaintiff's condition worsened over the next 48-hours as she began to experience muscle contractions, tremors, intense nausea, violent prolonged seizures, and much more. *Id*. ¶ 17. Two days later, Plaintiff was hospitalized at Temple University Hospital's Neuro Intensive Care Unit and placed on a ventilator. *Id*. ¶ 18. She eventually entered a coma where she remained unconscious for three days. *Id*. ¶¶ 19-20. When she finally woke up from her coma, she experienced memory loss and non-ambulation with severe physical deconditioning. *Id*.

Plaintiff's pain, however, was not limited to those three days; she continued to suffer for at least six months after. Pls.' Amend. Compl. ¶ 21. As a result of her condition and hospitalization, Plaintiff reaggravated multiple pre-existing medical ailments she possessed prior to the Pump's implantation; moreover, she had to function without adequate pain management. *Id*. ¶ 21. In March of 2019, a treating physician informed Plaintiff that the Pump was not

operating and had not discharged any pain medication since December 11, 2018, the day she visited Dr. Rosen. *Id*. ¶ 22. According to Plaintiffs' Amended Complaint, Mrs. McDonnell's symptoms were caused by a sudden and severe morphine withdrawal due to the Pump's alleged malfunction and defect. *Id*. ¶¶ 23-24. The Pump is purportedly designed to have a battery life of at least five years and as much as fifteen; Plaintiff's lasted less than thirty-seven months. *Id*. ¶¶ 33-34

Plaintiffs now bring six claims against Defendant, alleging: (1) Negligence; (2) Strict Liability; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Intentional Misrepresentation; and (6) Negligent Misrepresentation. Pls.' Amend. Compl. ¶¶ 31- 71. Moreover, although not articulated in a specific count, Plaintiff Gary McDonnell, Mrs. McDonnell's husband, alleges facts for a loss of consortium claim. *Id*. ¶¶ 28-31.

Defendant now moves to dismiss all claims except Count I, Plaintiffs' negligence claim. Def.'s Br. at 3. Flowonix contends that the statute of limitations has run on Plaintiffs' negligent and intentional misrepresentation claims; in the alternative, if this Court determines that the time has not run, Flowonix asserts that the claims are insufficiently pled. *Id*. Defendant also asserts that Pennsylvania state law bars Plaintiffs' strict liability and warranty claims. *Id*.

This Court finds that Plaintiffs' warranty and strict liability claims are barred under applicable state law. However, Plaintiffs' negligent and intentional misrepresentation claims are not barred by the statute of limitations and are sufficiently pled. Moreover, Plaintiffs' non-articulated loss of consortium claim is also sufficiently pled. Thus, Claims One, Five, and Six of Plaintiffs' Amended Complaint survive Defendant's Partial Motion to Dismiss, while Claims Three and Four are dismissed with prejudice.

**II.     STANDARD OF REVIEW**

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Id*. at 234 (quoting *Twombly*, 550 U.S. at 556).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit decided *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), in which it set forth a three-part test that district courts must apply when evaluating whether allegations in complaint survive a 12(b)(6) motion to dismiss. A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion to dismiss will be granted.

### III.  DISCUSSION[2]

#### A.  Plaintiffs' Intentional and Negligent Misrepresentation Claims

##### 1.  Statute of Limitations

Defendant argues that Count Five and Six of Plaintiffs' Amended Complaint for Intentional and Negligent Misrepresentation, should be dismissed because they are time-barred or, in the alternative, are insufficiently pled. Def.'s Br. at 6 and 8. Flowonix contends: (1) Plaintiffs fail to identify how Defendant made any comments to Plaintiffs that constituted fraud; and (2) that an unidentified agent named "Doug" is not enough to establish an agency relationship and is devoid of any specificity. *Id*. at 9.

As a preliminary matter, this Court must first address Defendant's statute of limitations argument. Federal courts should apply state tolling principles when addressing the limitation period. *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). In Pennsylvania, the applicable statutes of limitations for personal injury and fraud claims are two years. *See* 42 Pa. C.S. §§ 5524 and 5524(7). Most tort causes of action accrue, causing the limitations period to begin to run, when the injury occurs. *Id.* However, Pennsylvania courts apply a "discovery rule," which tolls a limitations period during the time an injured party is unable, despite the exercise of due diligence, "to know of the injury *or its cause*." *Pocono Int'l Raceway Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (Pa. 1983) (emphasis added). A plaintiff is not under an "absolute duty to discover the cause of [their] illness," but must exercise only the level of diligence a reasonable person would. *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (Pa. 1995).

---

[2] This Court will address each of Defendant's arguments in the order they appear in its Brief, even if it does not follow the claims' numerical order. Thus, the Court will first turn to arguments made about Counts Five and Six.

5

In the instant matter, Plaintiffs allege that Mrs. McDonnell was informed on March 11, 2019 that her Pump had neither operated nor delivered morphine since December 2018. Thus, Plaintiff became aware of the cause of her injury on March 11, 2019 and, by extension, the two-year statute of limitations began to run on that day. Any claim she would or could have made should have been filed on March 11, 2021.

Plaintiffs filed their initial Complaint on March 9, 2021, two days prior to the time period running, in the Philadelphia Court of Common Pleas. *See* ECF No. 1. Defendant eventually removed the case to federal court on March 24, 2021. *Id*. The initial Complaint contained most of the facts articulated above but did not reference: Defendant's agent ("Doug"), what he said, or Counts Five and Six. ECF No. 1, Ex. A. On May 4, 2021, Plaintiffs amended their Complaint and included the two claims, and facts, at issue now.

Defendant's statute of limitations argument must fail. Under Fed. R. Civ. P. 15(c), for an amended pleading to "relate back" to the date of the original filing, the pleading as amended must:

> (1) relate to the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) within the period provided by law for commencing the action against him, the party to be brought in by the amendment must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits…

*Lockwood v. City of Philadelphia*, 205 F.R.D. 448, 451 (E.D. Pa. 2002) (internal citation omitted). Plaintiffs' original Complaint was filed in Pennsylvania state court under a different pleading standard. Nonetheless, it possessed enough facts to put Defendant on notice that Plaintiffs may raise a negligent or intentional misrepresentation claim. *See* ECF No. 1, Ex. A, ¶ 27. Specifically, the first Complaint alleged that Defendant "suppl[ied] information to Ruth and

6

her medical providers about the status of the product, *after its failure, which was materially false and misleading.*" *Id*. (emphasis added).

Both Complaints contain and plead the same facts and conduct that give raise to Claims Five and Six. The Amended Complaint includes more details to flush out the new claims Plaintiffs now wish to bring but they do not change the core facts, conduct, or transaction. Essentially, Mrs. McDonnell's Pump stopped releasing pain medication after her visit to Dr. Rosen's office and she suffered from morphine withdrawal. The only difference this Court can glean from the Amended Complaint is that Plaintiffs add legal names to the same legal theories they attempted to allege in their original Complaint. Thus, this Court finds that Count Five and Six are not time-barred.

### 2. Count Five, Intentional Misrepresentation, is Sufficiently Pled

This Court next addresses whether Plaintiffs' Count Five is sufficiently pled. We find it is. "Under Pennsylvania law . . . a fraudulent misrepresentation is established by presenting clear and convincing evidence of[:] (1) a misrepresentation of a material fact; (2) a fraudulent utterance thereof by the defendant; (3) an intention that the other person would thereby be induced to act, or to refrain from acting; (4) justifiable reliance by the recipient; and (5) damage to the recipient caused by this reliance." *Cara Corp. v. Cont'l Bank,* 148 B.R. 760, 771 (Bankr. E.D. Pa. 1992). Moreover, to establish an agency relationship, a complaint must allege facts that: "(1) identify the agent by name or appropriate description; and (2) set forth the agent's authority, and how the tortuous acts of the agent either fall within the scope of that authority, or, if

unauthorized, were ratified by the principal." *Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 109 (Pa. Super 2002) (internal quotations omitted).

Plaintiffs' Amended Complaint satisfies the above elements. First, it identifies an individual, "Doug," who is Defendant's agent. It also stated that "Doug" examined Plaintiff's Pump on December 19, 2018. Pls.' Amend. Compl. ¶¶ 41-42. Although the Amended Complaint does not give more details as to "Doug's" last name or title, this Court finds that it sufficiently plead enough facts to survive a Motion to Dismiss. It is premature to dismiss this claim as more discovery is needed to determine who exactly "Doug" is.

Defendant attempts to downplay "Doug" and claim he is an unidentified person with no agency relationship. However, Plaintiffs' ability to provide a name for the agent and the December 19, 2018 examination date of the Pump satisfies the pleading requirements. If the Amended Complaint had merely stated "Defendant's Agent examined the Pump," this Court would have likely concluded that Plaintiffs' claim was devoid of specificity and made conclusory allegations, failing the *Iqbal* standard.

Second, "Doug" analyzed the implanted Pump and determined that the pump was "filled and functioning." *Id*. Plaintiffs allege the Pump was no longer functioning nor releasing morphine which caused the withdrawal symptoms and Plaintiff's pain. Thus, the Defendant, through its agent "Doug," made a fraudulent representation of material fact that the Pump was filled with medication and was functioning. Third, Defendant attempts to argue that Plaintiffs failed to state which employee made the alleged misrepresentation but as detailed above, "Doug" is the alleged agent. Finally, Plaintiff justifiably relied on "Doug's" statement that the Pump was

filled and functioning; this trust and reliance led to her pain and suffering. Thus, Count Five of Plaintiffs' Amended Complaint is sufficiently pled.

### 3. Count Six, Negligent Misrepresentation, is Sufficiently Pled

Plaintiffs' Negligent Misrepresentation claim is also sufficiently pled. Under Pennsylvania law, a negligent misrepresentation[3] claim mirrors that of an intentional misrepresentation except for: (1) the state of mind of the actor; and (2) the duty commonly assumed in negligence actions. *See Weisblatt v. Minnesota Mut. Life Ins. Co.,* 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998).

The Court's analysis above in Section III(A)(2) applies here. Plaintiffs sufficiently plead that Defendant's agent, "Doug" made a representation to Plaintiff that her Pump was filled with medication and was fully operating after he inspected it on December 19, 2018. Pls.' Amend. Compl. ¶¶ 41-42. The only difference is whether "Doug" did not comport with the required duty or whether he intentionally misinformed Plaintiff, and, without discovery, this Court cannot make that determination; thus, it is premature to dismiss this claim. Instead, the Amended Complaint adequately pleads enough facts to survive Defendant's Motion to Dismiss.

## B. Plaintiffs' Strict Liability Claim is Barred Under Pennsylvania Law

Count II of Plaintiffs' Amended Complaint, the Strict Liability claim, is barred under Pennsylvania law. Pennsylvania follows § 402A of Restatement (Second) of Torts' strict liability analysis. *Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 104 A.3d 328, 348 (Pa. 2014). It follows that "one who sells a product in a defective condition unreasonably dangerous to the user or

---

[3] Negligent misrepresentation has four elements: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Smith v. Lincoln Ben. Life Co.*, 395 F. App' x 821, 824 (3d Cir. 2010) (citing *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 277 (2005)).

consumer . . . is subject to liability for physical harm . . . caused." *Barnish v. KWI Bldg. Co.*, 602 Pa. 402, 980 A.2d 535, 541 n.4. (Pa. 2009). To bring a strict products liability claim under § 402A, a plaintiff must show that (1) the product was defective, (2) the defect caused the plaintiff's injury, and (3) the defect existed at the time the product left the manufacturer's control. Restatement (Second) of Torts § 402A.

The theory of liability in this case is premised on the applicability of Comment k of § 402A to prescription medical devices. Comment k "denies [the] application of strict liability [on] products such as *prescription drugs*, which, although dangerous in that they are not without medical risks, are not deemed defective and unreasonably dangerous when marketed with proper warnings." *Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 889-90 (Pa. 1996) (emphasis added).

Since *Hahn*, the Pennsylvania Supreme Court has not ruled on the applicability of Comment k to prescription medical devices. As no decision exists, this Court must predict how the Pennsylvania Supreme Court would rule in the event it addresses this issue. *Berrier v. Simplicity Mfg. Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009) ("In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case."). To aid in its review, a federal court "must consider relevant state precedents, analogous decisions, considered dicta . . . [] and other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980).

In 2006, the Pennsylvania Superior Court held that a plaintiffs' strict liability claim against a prescription medical device manufacturer was barred by Comment k. *Creazzo v. Medtronic, Inc.*, 2006 PA Super 152, 903 A.2d 24, 31 (Pa. Super. Ct. 2006). The court found "no reason why the same rational [sic] applicable to prescription drugs may not be

applied to medical devices." *Id.* Courts in this District, relying on *Hahn* and *Creazzo*, have predicted that the Pennsylvania Supreme Court will extend Comment k to prescription medical devices. *See, e.g., Esposito v. I-Flow Corp.*, No. 10-3883, 2011 WL 5041374 (E.D. Pa. Oct. 24, 2011); *Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737, 750 (E.D. Pa. 2007); *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419 (E.D. Pa. 2004); *Taylor v. Danek Medical, Inc.*, No. 95-7232, 1998 WL 962062 (E.D. Pa. Dec. 29, 1998). Considering the decisions of courts in this Circuit and of the lower courts of Pennsylvania, this Court predicts the Pennsylvania Supreme Court will extend Comment k to prescription medical devices. Thus, Plaintiffs' strict liability claim must be dismissed.

## C. Plaintiffs' Breach of Warranty Claims are Dismissed

### 1. Count III, Breach of Express Warranty, is Dismissed

Defendant moves to dismiss Plaintiffs' claim for breach of express warranty on the grounds that the claim fails as a matter of law. Under Pennsylvania law, express warranties are "specifically negotiated;" they are created by a seller through "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Goodman v. PPG Indus.*, 2004 PA Super 151, 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004); 13 Pa. Cons. Stat. Ann. § 2313.

To create an express warranty, "the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." *Eiser v. Brown & Williamson Tobacco Corp.*, 897 A.2d 524, 2006 WL 933394, at *5 (Pa. Super. Ct. Jan. 19, 2006) (quoting *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004)). To plausibly plead an express warranty claim, some level of meaningful detail is required. *See, e.g., Luke v. Am. Home Prods. Corp.*, 1998 WL 1781624, at *6 (Pa. Ct. Com. Pl.

Nov. 18, 1998) (dismissing an express warranty claim because the complaint failed to state "what the warranty allegedly covered, when it was made[,] and to whom it was directed").

Federal courts applying Pennsylvania law in the medical device context have instructed that this includes such facts as "the specific source of the alleged warranty . . . and the specific statements made." *Doughtery*, 2012 WL 2940727, at *9 n.15. These courts have consistently dismissed claims premised solely on conclusory allegations that medical device manufacturers falsely warranted that their products were safe and fit for their intended use. *See, e.g.,Shuker v. Smith & Nephew PLC*, 2015 WL 1475368, at *12 (E.D. Pa. Mar. 31, 2015) (dismissing an express warranty claim because the complaint only alleged that defendants falsely warranted that medical devices were "'safe and fit for use for the purposes intended, . . . w[ere] of merchantable quality, . . . did not produce any dangerous side effects, and . . . w[ere] adequately tested and fit for [their] intended use'"); *Kester v. Zimmer Holdings, Inc.*, 2010 WL 2696467, at *9-10 (W.D. Pa. June 16, 2010) (dismissing an express warranty claim based on the allegation that defendants "expressly warranted that [their devices] were safe and well accepted by users").

Plaintiffs fail to plead any express language used to create an express warranty at all. They also fail to attach the contract or "writing" upon which the alleged warranty was based on. Failure to attach the contract which provides the express warranty in writing is fatal to their claim as the Defendant insufficiently informed as to the exact nature of the claim. *See Connor v. Allegheny General Hosp.*, 461 A.2d 600 (Pa. 1983). Without any facts to support the existence of

an express warranty, Plaintiffs fail to plausibly plead a claim for breach of express warrant. Accordingly, Count III is dismissed.

### 2. Count IV, Breach of Implied Warranty, is Dismissed and Barred

Moreover, Plaintiffs' Breach of Implied Warranty claim faces the same challenge that the strict liability claim faced. The implied warranty of merchantability "protect[s] buyers from loss where goods purchased are below commercial standards." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 357 (Pa. Super. Ct. 2015). Goods need not be of the best quality, but "should . . . be of reasonable quality within [the] expected variations and for the ordinary purpose for which they are used." *Id.* at 358.

Pennsylvania courts have held that "[t]he essence of the warranty of merchantability is that the item sold is fit for the ordinary purposes for which such goods are used." *Makripodis v. Merrell-Dow Pharms., Inc.*, 523 A.2s 374, 376 (Pa. Super. Ct. 1987) (citations omitted). The *Makripodis* court further held that "the very nature of prescription drugs themselves precludes the imposition of a warranty of fitness for 'ordinary purposes." *Id.* Prescription drugs, the court stated, can only be obtained via a prescription, and that "restriction . . . has been imposed because of the inherently dangerous properties of such drugs." *Id.* at 376.

Courts in this Circuit, relying on *Makripodis*, have concluded that Comment k is equally applicable to strict liability and breach of implied warranty. *Terrell v. Davol, Inc.*, No. 13-5074, 2014 WL 3746532, *6 (E.D. Pa. July 30, 2014); *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 491 n.35 (W.D. Pa. 2012); *Soufflas*, 474 F. Supp. 2d at 752.

In *Parkinson*, the court stated that "there is no basis in law or logic to treat prescription drugs differently than prescription medical devices." *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741, 753 (W.D. Pa. 2004). The court further concluded that since "breach of

implied warranty claims for prescription drugs are precluded under Pennsylvania law, breach of implied warranty claims for medical devices [] are precluded for identical reasons." *Id.* The Court agrees with the consensus that the Pennsylvania Supreme Court would extend Comment k to breach of implied warranty of merchantability claims.

Because medical devices, like the Pump in this case, fall under Comment k's umbrella, there can be no breach of implied warranty. *See Carson v. Atrium Med. Corp.*, No. 15-830, 2016 WL 3181414 at *4 (W.D. Pa. June 8, 2016). Necessarily, Plaintiffs' breach of implied warranty claim is dismissed.

### D.  Plaintiffs' Loss of Consortium Claim is Sufficiently Pled

Under Pennsylvania law, loss of consortium is defined as the "loss of the company, society, cooperation, affection and aid of a spouse in every conjugal relation." *Pahle v. Colebrookdale Twp.*, 227 F.Supp.2d 361, 374-75 (E.D. Pa. 2002). Loss of consortium does not require that the plaintiff wife or husband sustain physical injury; rather, it requires damaged marital expectations because of the injury to the opposite spouse. Therefore, loss of consortium is derivative of the underlying claims asserted by the opposite spouse.

Here, the Plaintiff Gary McDonnell is Mrs. McDonnell's husband. Pls.' Amend. Compl. ¶ 28. He alleges he incurred substantial expenses for assisting his wife and mitigating her harm. *Id*. His expenses have included payments for medical care and other financial expenditures. *Id*. ¶ 29. Mr. McDonnell further alleges he has to "forgo many of the pleasures of life by virtue of his need and desire to assist his wife" because of her injuries caused by Defendant. *Id*. ¶ 30. Although this claim is not given a specific numeral count as the other six, this Court finds that the loss of consortium claim is sufficiently plead at this time to survive Defendant's Motion to Dismiss.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. Specifically, this Court dismisses Counts Three and Four; however, Counts One, Five, Six and the Loss of Consortium Claim survive Defendant's Motion. A corresponding order will follow.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**